UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUAN SMITH | CIVIL ACTION |
| VERSUS | NO. 13-52 |
| HARRY CONNICK, ET AL. | SECTION "B"(3) |

## ORDER AND REASONS

Considering Plaintiff's Motion for Stay (Rec. Doc. No. 31) and Defendants' Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 14), for the reasons articulated below,

**IT IS ORDERED** that Plaintiff's Motion for Stay (Rec. Doc. No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 14) is **GRANTED IN PART, AND DENIED IN PART;**

**IT IS FURTHER ORDERED** that Counts One, Two, Three, and Seven of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE;**

**IT IS FURTHER ORDERED** that Counts Four, Five, and Six are **DISMISSED WITHOUT PREJUDICE**, subject to the following order;

**IT IS FURTHER ORDERED** that Counts Eight, Nine, Ten, Eleven, Twelve, and Thirteen are **DISMISSED WITHOUT PREJUDICE;** Failure to file an amended complaint within twenty days of entry of this opinion that sufficiently addresses issues *infra* will lead to dismissal of federal claims with prejudice without need of further notice.

## I. Procedural History

On January 10, 2012 the United States Supreme Court overturned Plaintiff Juan Smith's conviction for five counts of first-degree

1

murder. *Smith v. Cain*, 132 S. Ct. 627, 630 (2012). The Court found that the Orleans Parish District Attorney's Office withheld evidence that was potentially exculpatory, in violation of Smith's Due Process rights and *Brady v. Maryland*, 373 U.S. 83 (1963). This civil suit followed. Here, Smith alleges "pervasive misconduct of the Orleans Parish District Attorneys' Office" and seeks monetary relief pursuant to "42 U.S.C. § 1983, 1985, and 1988, and state law." He named as Defendants Harry F. Connick, the District Attorney for Orleans Parish at the time of Smith's trial; Leon Cannizzaro the current District Attorney for Orleans Parish; Roger Jordan, an Assistant District Attorney for Orleans Parish; the Orleans Parish District Attorney's Office; and other unnamed Assistant District Attorneys for Orleans Parish. (Rec. Doc. No. 1). All Defendants filed a Motion to Dismiss under Rule 12(b)(6), based on various theories of immunity. (Rec. Doc. No. 14).

Smith was initially represented by counsel in the instant civil suit. However, shortly after the Motion to Dismiss was filed, counsel withdrew. (Rec. Doc. No. 28). This caused the Court to continue hearing on Defendants' Motion to Dismiss multiple times so that Smith could obtain new counsel or file a response to Defendants' Motion pro se. (Rec. Doc. Nos. 17, 21, and 28). Smith has yet to obtain new counsel.[1] He now seeks to stay the instant case. Defendants oppose, and ask the Court to act on the pending Motion to Dismiss. (Rec. Doc.

---

[1] He remains incarcerated on a separated murder conviction. He claims he intends to challenge that conviction as well, contending it resulted from similar *Brady* violations. (Rec. Doc. No. 31).

2

No 33).

The Court does not find compelling reason to again continue hearing Defendants' Motion to Dismiss. The Court has already postponed hearing the Motion for several months. At this time, it is necessary to move to the merits.

## II. Motion to Dismiss

When reviewing a motion to dismiss for failure to state a claim, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted).

## III. Prosecutorial Immunity

In civil suits alleging deprivation of constitutional rights by state officials, government employee defendants are entitled to various levels of immunity from suit when sued in their individual capacity. The level of immunity they are entitled depends on the facts and circumstances of the case. *See*, *e.g.*, *Pulliam v. Allen*, 466 U.S. 522, 529 (1984).

The majority of officials are entitled to what is known as

qualified immunity when "performing discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This shields them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.

Where the defendant is a government prosecutor, however, the defendant is entitled to the heightened protection of absolute immunity when engaged in prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). This level of immunity - where it applies - is unconditional and completely guards against suit. *Id*. at 427-28. The justification underlying this seemingly far-reaching policy is to insure the "vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*.

It is important to note however that the immunity does not apply to all of the actions a prosecutor takes. Instead, defendants only receive absolute immunity for actions taken within their *prosecutorial* duties. In *Mitchell v. Forsyth*, 472 U.S. 511 (1985), for example, the Supreme Court held that absolute immunity did not extend to any national security responsibilities of Attorney General John Mitchell. Mitchell was therefore only entitled to qualified immunity for his role in illegally wiretapping phone lines. *Id.* at 521; *see also Burns v. Reed*, 500 U.S. 478, 496 (1991) (prosecutor entitled to absolute immunity for statements in court, but entitled to only qualified immunity for advice given to police). That being

4

said, the immunity – when it applies – serves to completely bar suit, no matter how egregious the actions. *Imbler*, 424 U.S. at 427 ("To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.").

## IV. Analysis

Plaintiff's claims – listed as thirteen separate counts in his Complaint – can be fairly analyzed in three categories: (1) Claims under 42 U.S.C. § 1983 for various forms of prosecutorial misconduct; (2) Claims under 42 U.S.C. § 1983 against District Attorneys for administering unconstitutional official policies; (3) Claims arising out of state law. The Court will analyze each category in turn.

**A. Prosecutorial Misconduct Claims Under 42 U.S.C. § 1983 (Counts One, Two, and Three)**

Defendants in the instant case are entitled to absolute immunity for the claims brought under federal law alleging their misconduct as prosecutors in their individual capacity. As already stated, when a prosecutor acts within his or her prosecutorial role they are entitled to complete protection from suit. *See supra* Part III. Here, there is no question that Defendants' failure to turn over exculpatory evidence during the course of Plaintiff's criminal litigation was done within Defendants' prosecutorial role. *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). Thus, even though the Supreme Court determined Defendants' actions violated the

5

Constitution, we must dismiss Plaintiff's claims here.

The only possible claim Plaintiff alleges in this category that could survive absolute immunity is Plaintiff's claim that Defendants' "conducted a constitutionally deficient investigation." (Rec. Doc. No. 1 at 23). Because a prosecutor does not act within his prosecutorial role when conducting investigative tasks, such a claim is not barred by the doctrine of absolute immunity. *See Burns*, 500 at 496. However, even if there were constitutional deficiencies in the investigation process here, Plaintiff does not allege any of the Defendants were involved in the investigation. Instead, all of the facts pled by Plaintiff regarding the investigation concern police officers. Nowhere does Plaintiff allege with any specificity that prosecutors advised police, or participated in the police investigation. For this reasons, his claims are bared by the doctrine of absolute immunity and must be dismissed.

**B. Claims under 42 U.S.C. § 1983 Against District Attorneys for Administering Unconstitutional Official Policies (Counts Four, Five, Six, and Seven)**

Plaintiff next alleges that Defendants were responsible for instituting unconstitutional official policies, and failing to train assistant district attorneys in compliance with *Brady*, 373 U.S. 83 (1963). Plaintiff alleges these claims first against Defendants in their official capacity (Counts Four, Five, and Six) and additionally in their individual capacity (Count Seven).

The individual capacity count, like the counts discussed above,

6

is subject to the doctrine of absolute immunity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (holding prosecutors enjoy absolute immunity in their supervision and training roles). Thus, Count Seven must be dismissed.

The official capacity counts require a different analysis. A § 1983 suit against a government employee in their official capacity is treated as a suit against the office, not the individual. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996); *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999). Accordingly, where the employee works for a municipality, the relevant analysis is whether the municipality can be held liable for the alleged violation. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). Further, the protections of any individual immunities that defendants may be afforded are not applicable when they are sued in their official capacity. *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("[D]efenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits.").

The Supreme Court first articulated the standard for municipal liability in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). There, the Court held that a municipality could be liable under § 1983, but only for a "policy or custom" that "inflicts the injury that the government as an entity is responsible" and not "an injury inflicted *solely* by its employees or

7

agents." *Id.* at 693.

In *Connick v. Thompson*, 131 S. Ct. 1350 (2011), a case remarkably similar to the instant matter, the Supreme Court applied the *Monell* framework to a district attorney's failure train assistant district attorneys in the requirements of *Brady*. There, the plaintiff was a former death row inmate who spent eighteen years in prison after prosecutors in the Orleans Parish District Attorney's Office (the same office as Defendants here) failed to turn over exculpatory blood evidence in violation of *Brady*. *Id.* at 1356-57. Thompson sued, alleging that the *Brady* violation was caused by unconstitutional policies at the office, and District Attorney Connick's failure to train the prosecutors in his office to avoid such constitutional violations. *Id.* at 1357. Thompson won a jury verdict in his favor, but the Supreme Court reversed. *Id.* at 1366. The Court held that Thompson failed "to show that Connick was on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in his office would" violate *Brady*. *Id.* at 1365.

Defendants' Motion to Dismiss recognizes that *Connick* permits suits against prosecutors for failure to train, or for administration of unconstitutional policies. Likely for this reason, Defendants have not asked the Court to dismiss Plaintiff's official capacity counts, but instead only asks that the Court limit these counts "to the narrow dictates of *Connick v. Thompson*." (Rec. Doc. No. 14-1 at 5); *see also id.* at 8 (requesting that the Court dismiss

"[a]ll of the Counts against Roger Jordan as well as the unnamed Assistant District Attorneys" and "Counts One, Two, Three, Eight, Nine, Ten and Eleven" but that "Counts Four, Five, Six and Seven should be limited to the strict and narrow confines of [*Connick*]").[2] The Court agrees that *Connick* contains the relevant analysis for official capacity suits against municipal prosecutors for failure to train. If Plaintiff wishes to pursue these claims, he must allege facts "to show that [Defendants were] on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in [the] office would" violate *Brady*. *Id.* at 1365. He has failed to do so at this time.

Based on the Complaint before the Court, there is reason to believe that Plaintiff's allegations are more likely to satisfy the requirements for official capacity suits under § 1983 than those alleged in *Connick*. Chiefly, *Connick* dealt with the sharing of exculpatory blood evidence. The Supreme Court remarked in its review of the case that Thompson's claim that Connick was on notice of *Brady* violations in the past was inadequate to put him on notice of potential abuses in the future because "[n]one of those [prior] cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind." *Connick*, at 1360. Therefore, Connick could not have been said to be on notice

---

[2] Somewhat confusingly, Defendants include Count Seven in their list of counts that should be confined to *Connick*. But Count Seven is an individual capacity suit, entitling Defendants to absolute immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). For that reason, Count Seven may be dismissed in its entirety.

9

that specific training was necessary to avoid the particular Constitutional violation that occurred. *Id*. Here, the violation of *Brady* concerned the sharing of exculpatory *statements*. It is undisputed that Defendants were aware of prior *Brady* violations regarding exculpatory statements in Defendants' office. Plaintiff was arrested in 1995. Prior to that time, at least six appellate decisions had issued overturing convictions based on the failure of Defendants' office to turn over exculpatory or impeachment statements. *See Kyles v. Whitley*, 514 U.S. 419 (1995); *State v. Knapper*, 579 So.2d 956 (La. 1991); *State v. Rosiere*, 488 So. 2d 965 (La. 1986); *State v. Perkins*, 423 So. 2d 1103 (La. 1982); *State v. Curtis*, 384 So. 2d 396 (La. 1980); *State v. Carney*, 334 So. 2d 415 (La. 1976). For this reason alone, Plaintiff presents a case distinguishable from the Supreme Court's decision in *Connick*.

However, even that difference being apparent, Plaintiff still must tailor his Complaint to the dictates of Supreme Court precedent. Because the Complaint, as it exists, does not apply the *Connick* framework, the Court dismisses it without prejudice to reurge. Plaintiff will be given twenty-days from entry of this opinion to amend his complaint in conformance with *Connick*. Specifically, he must allege facts "to show that [Defendants were] on notice that, absent additional specified training, it was 'highly predictable' that the prosecutors in [the] office would" violate *Brady*. *Connick*, at 1365.

**C. State Law Claims (Counts Eight, Nine, Ten, Eleven, Twelve, and Thirteen)**

The Court, having dismissed all of Plaintiff's federal claims, must now determine whether it has jurisdiction to decide his state law claims. Where a federal court has supplemental jurisdiction over state law claims based solely on their relatedness to federal claims, the court "may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Fifth Circuit has further instructed that "[o]rdinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well." *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). This is because judicial economy does not warrant the exercise of pendant jurisdiction, and the parties are not prejudiced by dismissal at such an early stage of litigation. *La Porte Const. Co., Inc. v. Bayshore Nat. Bank of La Porte, Texas*, 805 F.2d 1254, 1257 (5th Cir. 1986). But, "the dismissal of the pendent claims should expressly be *without* prejudice so that the plaintiff may refile his claims in the appropriate state court." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).

The Court, determining no reason to deviate from the general rule in the instant case and that neither party would be prejudiced by denial of supplemental jurisdiction, finds it necessary to dismiss Plaintiff's state law claims without prejudice following dismissal of his federal claims. As stated above, the Court is

granting Plaintiff twenty-days to amend his existing Complaint. Thus, the Court will retain jurisdiction over Plaintiff's state law claims for the time being and dismiss the state law claims only if Plaintiff fails to submit an amended complaint, or the amended complaint fails to state a claim for which relief can be granted.

New Orleans, Louisiana, this 14th day of February, 2014.

_____
UNITED STATES DISTRICT JUDGE